KAST JOHN TATAR, Plaintiff, *v.* MAXON CONSTRUCTION COMPANY, INC., Defendant-Third Party-Plaintiff-Appellant—(Freesen Bros., Inc., Third Party Defendant-Appellee.)

(No. 11406; ▇▇▇▇▇▇▇▇▇▇▇▇

Fourth District—January 11, 1972.

TRAPP, P. J., dissenting.

Duane L. Traynor, of Springfield, for Third Party Plaintiff-Appellant.

Giffin, Winning, Lindner, Newkirk & Cohen, of Springfield, (Herman G. Bodewes, of counsel,) for Third Party Defendant-Appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

We review the action of the circuit court of Sangamon County in dismissing a third party complaint seeking indemnification under the following facts. The plaintiff, Tatar, was an employee of Freesen Bros. and Freesen had a contract with Maxon Construction Co., the general contractor, in connection with the construction of a new power plant at Lake Springfield. The sub-contractor, by its contract, had agreed to indemnify the general contractor for any claims arising out of, or connected with injuries which may occur upon or about the sub-contractor's work. The sub-contractor's work was to do grading and leveling and the plaintiff employee was working on that phase of the contract in and around the exterior of the building. A beam or a board fell from the building, striking the plaintiff and injuring him. The allegation is that employees of the general contractor through their negligence caused the team to fall.

After the plaintiff employee filed his action against the general contractor, the general contractor filed its third party complaint asserting a right to indemnification under the indemnification clause. On motion of the sub-contractor, the third party complaint was dismissed and an appropriate final order entered. We affirm.

Paragraph 19 of the contract between the general contractor and the sub-contractor provides so far as is here relevant that:

"The Subcontractor agrees to indemnify the General Contractor and the Principal and to hold each of them forever harmless from and against all expenses, claims, suits, or judgments of every kind whatsoever, by or on behalf of any person, firm or corporation, by reason of,

arising out of, or connected with, accidents, injuries, or damages, which may occur upon or about the Subcontractor's work. Liability insurance policies shall be maintained by the Subcontractor such as will protect the Subcontractor, the General Contractor, and the Principal from claims for damage to property, and injury to persons, including death to any person or persons, which may arise out of Subcontractor's work. Such policies of insurance, and all other policies of insurance required by the Contract Documents, shall be open to the inspection of the General Contractor, and the Subcontractor shall, if required by the General Contractor, furnish properly authenticated certificates of such policies of insurance from insurance companies acceptable to the General Contractor."

The first Count of the dismissed complaint related to the indemnification agreement and a second count sought to recover against the sub-contractor for alleged breach of the contract for failure to secure insurance. That phase of the litigation is not within the scope of the notice of appeal and there is no objection concerning the action of the trial court in the dismissal of Count II.

██ Indemnification contracts, like any other contract, are to be interpreted so as to give effect to the intentions of the parties. When that intention is clearly ascertainable solely from the language used and no ambiguity exists, no rules of construction need be recited, because construction is unnecessary. When, however, it is ascertained there is an ambiguity and that such ambiguity necessitates construction of the language in a search for the intention of the parties, such language will be strictly construed for the reason that contractual provisions whereby a tort-feasor seeks to excuse or transfer a liability for his wrongful act, such result is not favored. In *Schek v. Chicago Transit Authority*, 42 Ill.2d 362, 247 N.E.2d 886, the Supreme Court noted that indemnity or exculpatory clauses were formerly held to be unenforceable as against public policy. The court then observed that today most all modern case law upholds such agreements, at least when the indemnity's conduct is not characterized as a gross negligence or misconduct. We do not read the opinion in *Schek* as precluding a rule of strict construction where an ambiguity is found to exist, but rather as an indication that the court found no ambiguity in the factual circumstances of *Schek*.

In this connection the appellate court for the 2nd District in *Leach v. Eychaner* (Ill.2d), 273 N.E.2d 55, adopted a rule of strict construction of indemnity agreements in reviewing a factual situation not expressly covered under the terms of the indemnification agreement involved.

██ In this case the language of the agreement requiring that the sub-contractor obtain liability insurance is more restrictive than the spe-

cific agreement to indemnify. Liability insurance is to be maintained insuring against injuries which may arise out of the sub-contractor's work. The indemnification language provides for indemnification for injuries which may occur upon or about the sub-contractor's work. While the difference in language is more than semantical, in our view the broader language requiring indemnification is not sufficient, when construed as we indicate, to require the sub-contractor to indemnify the contractor for the injuries here involved. The injuries were wholly unrelated to any activity of the sub-contractor either arising out of, or connected with, or occurring upon the sub-contractor's work. The mere fact that an employee of the sub-contractor was in or near the building and thus became a target for the projectile off the building by reason of the contractor's negligence is in our view clearly outside the scope of the contractual arrangements between the contractor and the sub-contractor.

At the time of our consideration of this case, we note the passage of Senate Bill 514, being Public Act 77-1629, which was approved by the Governor on September 23, 1971. This legislation, which is prospective only, declares that a promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy. Because such legislation is prospective only, it is of course inapplicable to this appeal. The rule of strict construction which we deem applicable and which the 2nd District in *Leach* found necessary seems at least in part to reflect the public policy need for a restrictive view of such contractual efforts which transfer responsibility for active tortuous conduct. The judgment of the circuit court of Sangamon County was correct and that judgment is affirmed.

Judgment affirmed.

SMITH, J., concurs.

Mr. PRESIDING JUSTICE TRAPP, dissenting:

It is customarily said that the primary object in construing a contract is to give effect to the intention of the parties. Such intent is to be determined from the language used when no ambiguity in such language exists, and a strict construction of that language which reaches a different result should not be adopted. *Schek v. Chicago Transit Auth.*, 42 Ill.2d 362, 247 N.E.2d 886.

The words used are to be given their usual, normal and natural meaning, *Knockaert v. Studebaker Corporation*, 84 Ill.App.2d 16, 228 N.E.2d 101, and the instrument is to be read and considered as a whole. *Cenco Instrument Corp. v. Thomas*, 80 Ill.App.2d 136, 225 N.E.2d 482; *Johnson v. Continental Illinois Natl. Bank*, 88 Ill.App.2d 124, 232 N.E.2d 59.

We consider the operative language of a contract to indemnify for:

"(A)ll expenses, claims, suits and judgments of every kind whatsoever . . . by reason of, arising out of, or connected with, accidents . . . which may occur upon or about the Subcontractor's work."

To minimize laborious detail with the dictionary, the stated forms of liability are patently expanded by the words, "every kind whatsoever." "Every" is generally synonymous with complete or entire; "whatsoever" is generally synonymous with "any kind at all"; "by reason of" is synonymous with cause and "arising out of" is synonymous with originating from a source.

In *De Tienne v. S. N. Nielsen Co.*, 45 Ill.App.2d 231, 195 N.E.2d 240, the issue was whether the subcontractor was liable to indemnify the contractor for the latter's negligence causing injury to the employees of the subcontractor. The contract provided indemnity for injuries:

"(C)aused directly or indirectly, or occasioned by . . . work in this order."

The court determined that the words "occasioned by" meant more than "caused by" and included that which provided opportunity for causal agencies to work injury, and that the injury was incurred by reason of being on the premises to do the job. This construction was followed in *Jeschke v. Mercury Builders, Inc.*, 122 Ill.App.2d 461, 259 N.E. 2d 342. In the latter case, the court pointed out that such language was described as meaning more than one level of accountability. The language here, which includes injuries which may "occur upon or about the Subcontractor's work" is equally if not more, encompassing and explicit than the words "occasioned by" as there construed.

The principal opinion calls for strict construction upon the authority of *Leach v. Eychaner* (Ill.App.2d), 273 N.E.2d 55. That opinion held that the language of a lease indemnifying the lessor:

"(A)gainst and from any and all loss . . . arising out of or from any accident or other occurrence on or about said premises . . ."

was, in fact, sufficient to indemnify the lessor upon claims arising from the lessor's own negligence. The court simply refused to transfer the indemnifying clause of the real estate lease into and make it a part of a subsequent and different lease of machinery.

If, in fact, the intent was to require indemnity only for the subcontractor's own negligence, the language of the subsequent insurance provision would suffice. The conclusion reached in the principal opinion eliminates from consideration and makes meaningless better than sixty words of the text of the contract contained in the sentence which includes the language heretofore termed operative. This is not in accord with the principles

cited that the instrument must be considered as a whole giving the words a usual and normal meaning.

The words "Subcontractor's work" at the end of the sentence considered are not, in fact, a limitation upon the text providing indemnity. Rather, they are necessary to set this subcontractor apart from other subcontractors who might have a comparable incidence of liability to indemnify, and to separate and limit such liabilty of this subcontractor from that of others on the job.

For the foregoing reasons, I would reverse the order of the Circuit Court dismissing the complaint and remand the cause for further proceedings.